**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JEREMY RIVERS
*Plaintiff*,

v.

FEDERAL AVIATION ADMINISTRATION,
BRYAN BEDFORD, in his official capacity as Administrator of the Federal Aviation Administration, WILLIAM MCKENNA, in his official capacity as Chief Counsel of the Federal Aviation Administration,
U.S. DEPARTMENT OF TRANSPORTATION, and SEAN DUFFY, in his official capacity as Secretary of Transportation,
*Defendants*.

Civil Action No. __________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Jeremy Rivers seeks relief from this Court against Defendants Federal Aviation Administration, Bryan Bedford (in his official capacity as Administrator of the Federal Aviation Administration), William McKenna (in his official capacity as Chief Counsel of the Federal Aviation Administration), the U.S. Department of Transportation, and Sean Duffy (in his official capacity as Secretary of Transportation). Defendants are collectively referred to as the "FAA."

## EXECUTIVE SUMMARY

1. Jeremy Rivers is an aviation enthusiast who uses his pilot certificate to give back to his community. Rivers is a volunteer pilot with Wings of Mercy East Michigan ("WOM-EM"). WOM-EM is a network of pilots that help patients in Eastern Michigan reach appointments at world-class facilities like the Mayo Clinic, University of Wisconsin Hospital, and the Cleveland Clinic. WOM-EM does not accept any payment from patients or their insurers for these flights. Instead, WOM-EM operates on monetary and in-kind donations.

2. WOM-EM has funds available to offset Rivers's flight operating costs. But the FAA is currently preventing Rivers and pilots like him from receiving those funds. FAA regulations by their terms allow a pilot to receive a pro rata reimbursement for operating costs like fuel and airplane rental fees incurred on a flight with passengers. FAA *interpretations*, however, effectively prohibit volunteer pilots from receiving any amount of reimbursement. Although Rivers would like to provide additional charitable medical flights, the high cost for each flight prevents him from doing so without reimbursement from WOM-EM.

3. These FAA interpretations of its regulation find no support in the regulation's actual text. In fact, as described in FAA's own preamble to the regulation, FAA's current definition of "compensation" is far broader than, inconsistent with, and contrary to the regulation's plain language. Accordingly, FAA's current interpretations are "not in accordance with law." Rivers seeks to vacate these erroneous FAA interpretations and obtain declaratory relief that will allow him to receive pro rata reimbursement for his charitable flights.

## PARTIES

4. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

5. Plaintiff Jeremy Rivers is an individual who resides in Wayne County, Michigan.

6. Mr. Rivers currently holds a commercial pilot certificate. The FAA issued Mr. Rivers a private pilot certificate on September 19, 2023.

7. Mr. Rivers is a volunteer pilot with Wings of Mercy East Michigan, Inc. ("WOM-EM"). He has flown patients both as the pilot in command and as a right-seat backup pilot.

8. Mr. Rivers rents a Piper Archer III for volunteer flights in which he is the pilot in command. The rental fee for this aircraft is $155 per hour.

9. On July 13, 2026, Mr. Rivers was the pilot in command on part of a multi-leg journey to transport a patient to the Mayo Clinic. Mr. Rivers paid $460 in rental fees to complete his part of this mission. Mr. Rivers was not reimbursed for this expense.

10. Mr. Rivers will complete additional volunteer flights in the future with WOM-EM. However, the costs he must bear for these volunteer flights limit the number of flights he can provide.

11. If WOM-EM reimburses Mr. Rivers for flight operating costs he will be able to complete more flights than his present financial situation allows him to complete.

12. WOM-EM desires to reimburse its volunteer pilots for flight operating expenses and has the funds to do so. But for FAA's atexual interpretations of 14 C.F.R. § 61.113, WOM-EM would reimburse Mr. Rivers for "the pro rata share of the operating expenses of a flight with passengers" and any other expenses allowable by 14 C.F.R. § 61.113's plain text.

13. But for FAA's atexual interpretations of 14 C.F.R. § 61.113, Mr. Rivers would accept reimbursement from a volunteer pilot organization for "the pro rata share of the operating expenses of a flight with passengers" and any other expenses allowable by 14 C.F.R. § 61.113's plain text.

14. Defendant Federal Aviation Administration is a federal agency within the U.S. Department of Transportation. *See* 49 U.S.C. § 106(a).

15. Defendant Bryan Bedford is the Administrator of the Federal Aviation Administration. Federal law grants the Administrator broad powers to regulate the aviation industry. *See id.* §§ 106(f)(2), 44701. He is sued in his official capacity.

16. Defendant William McKenna is the Chief Counsel of the Federal Aviation Administration. The Chief Counsel's office issues letters interpreting federal laws and regulations concerning aviation, including the interpretations that established the common purpose test, third party reimbursement ban, and the overbroad definition of compensation. He is sued in his official capacity.

17. Defendant U.S. Department of Transportation is an executive department of the United States. *See id.* § 102(a). The Federal Aviation Administration is housed within the Department of Transportation. *Id.* § 106(a).

18. Defendant Sean Duffy is the Secretary of Transportation. He is sued in his official capacity. The Administrator of the Federal Aviation Administration reports directly to the Secretary of Transportation. *Id.* § 106(b)(1)(E).

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under federal law (5 U.S.C. § 706) and 28 U.S.C. § 1346 because this suit constitutes a civil action against an executive department of the United States.

20. This Court has the authority to grant declaratory relief under 28 U.S.C. § 2201 and injunctive relief under 28 U.S.C. § 2202. This Court has the authority to hold unlawful and set aside agency action under 5 U.S.C. § 706.

21. Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(e)(1)(C) because this is a suit brought against an officer or employee of the United States in his official capacity, the Plaintiff resides in this district, and no real property is in controversy. Venue is proper in the Southern Division pursuant to 28 U.S.C. § 102(a)(1).

22. The Administrative Procedure Act, 5 U.S.C. § 702, waives sovereign immunity for claims under § 706. *Krafsur v. Davenport*, 736 F.3d 1032, 1036 (6th Cir. 2013).

## LEGAL BACKGROUND

23. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

### *Congress Empowers FAA to Create Classes of Pilot Certificates*

24. FAA has broad authority to "promote safe flight of civil aircraft in air commerce." 49 U.S.C. § 44701(a).

25. FAA also has broad authority to issue airman certificates (commonly referred to as "pilot's licenses") that "contain terms the Administrator decides are necessary to ensure safety in air commerce." 49 U.S.C. § 44703(b)(1)(C).

26. Other than designating the name and minimum hours required for the airline transport pilot ("ATP") certificate, Congress gave FAA little guidance on the classes, privileges, and limitations for airman certificates. *See id.* § 44703(b)(2); *id.* § 44701 note (Airline Safety and Federal Aviation Administration Extension Act of 2010 mandating 1,500 hours for ATP certificate).

27. Pursuant to section 44703, FAA created several categories of pilot certificates. 14 C.F.R. § 61.5(a)(1). The most popular entry-level certificate is the private pilot certificate. *See* Fed. Aviation Admin., U.S. Civil Airmen Statistics, Table 1 (last updated Apr. 7, 2026), https://www.faa.gov/data_research/aviation_data_statistics/civil_airmen_statistics (reporting 174,155 active private pilots in 2025). Under that same authority, FAA also imposed limitations on the privileges a private pilot[1] may exercise. 14 C.F.R. § 61.113.

---

[1] This complaint uses "private pilot" as shorthand for a person who holds and is exercising the privileges of a private pilot certificate.

***FAA Regulations Contain Privileges and Limitations of Pilot Certificates***

28. FAA regulations generally prohibit a private pilot from acting as pilot in command of a flight "for compensation or hire" and from acting as pilot in command of a flight carrying passengers "for compensation or hire." 14 C.F.R. § 61.113(a).

29. The phrase "for compensation or hire" is not defined in statute or regulations. *Flytenow, Inc. v. FAA*, 808 F.3d 882, 886 (D.C. Cir. 2015).

30. Instead, FAA interprets "for compensation or hire" broadly. "FAA views compensation as the receipt of anything of value." Letter from Rebecca MacPherson, FAA Assistant Chief Counsel for Regulations, to Mike Sommer 1 (Oct. 8, 2010) [hereafter "Sommer Interpretation"], https://www.faa.gov/media/14326.

31. Section 61.113(a) has five exceptions that allow a private pilot to receive compensation for acting as pilot in command. *Id.* § 61.113(b)–(f). Only § 61.113(c) is relevant to this case. It reads: "A private pilot may not pay less than the pro rata share of the operating expenses of a flight with passengers, provided the expenses involve only fuel, oil, airport expenditures, or rental fees." *Id.* § 61.113(c).

32. This "pro rata" exception allows a pilot to offset certain costs of "a flight with passengers" so long as the pilot does not pay "less than the pro rata share of the operating expenses." *Id.* For example, if a pilot flies with only one passenger, he or she must pay at least half of the operating costs. If a pilot flies with three passengers, he or she must pay at least one quarter of the operating costs.

***FAA Interpretations Add Additional Limitations***

33. FAA has added additional requirements to § 61.113(c) by interpretation. These extratextual requirements are as follows:

a. The "common purpose" test. *See* Letter from Rebecca MacPherson, FAA Assistant Chief Counsel for Regulations, to Peter Bunce 1 (Nov. 19, 2008) [hereafter "Bunce Interpretation"], https://www.faa.gov/media/14781. This test requires the pilot and passengers have a common purpose for the flight; the purpose cannot be solely for the passenger's benefit.

b. The third-party reimbursement ban. Letter from Rebecca MacPherson, FAA Assistant Chief Counsel for Regulations, to Ronald Lamb 2 (Mar. 1, 2010) [hereafter "Lamb Interpretation"], https://www.faa.gov/media/14196. FAA interpretations do not allow a private pilot to receive a reimbursement under § 61.113(c) from a third party, including charitable organizations. *Id.* Instead, the reimbursement must come directly from the passenger. *Id.*

c. The overbroad definition of compensation. "FAA views compensation as the receipt of anything of value." Sommer Interpretation at 1. FAA also considers non-operating costs that are reimbursed in connection with the flight as compensation. *Id.* This includes meals or lodging on multi-day flights. Letter from Donald Byrne, FAA Assistant Chief Counsel, to John Harrington 2 (Oct. 23,

1997) [hereafter "Harrington Interpretation"], https://www.faa.gov/media/15611.

34. The interpretations described in ¶ 33 effectively prohibit charitable organizations from reimbursing private pilots for aircraft operating expenses.

***How Section 61.113 Applies to Pilots With Higher Certificates***

35. By its terms, 14 C.F.R. § 61.113 only applies to private pilots.

36. Commercial pilot certificate holders can act as pilot in command for compensation or hire. 14 C.F.R. § 61.133(a)(1).

37. But a commercial pilot certificate alone does not authorize a pilot to fly passengers for compensation or hire. Instead, the pilot must be affiliated with an operator that has a FAA-issued air carrier or commercial operator certificate. *See generally id.* § 119.5.

38. Section 119.5's requirement means a commercial pilot certificate holder cannot receive reimbursement for flight expenses from a volunteer pilot organization unless the organization itself holds an air carrier certificate.

39. WOM-EM does not have a FAA-issued air carrier or commercial operator certificate. Welch Decl. ¶ 8.

40. If a pilot is not exercising the privileges of a higher certificate (such as a commercial pilot certificate) the FAA treats the person as exercising the privileges of a lower certificate (such as a private pilot certificate).

41. Because WOM-EM does not hold a FAA-issued air carrier or commercial operator certificate, its volunteer pilots are exercising the privileges of their private pilot certificate when they fly patients.

42. Section 61.113 applies to the holder of a commercial pilot certificate while he or she is exercising the privileges of a private pilot certificate. Section 61.113 thus applies to pilots when they engage in charitable flights.

***Deference to Agency Interpretations of Its Own Regulations***

43. Under Supreme Court precedent, an agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotations omitted).

44. The Supreme Court later clarified "a court should not afford *Auer* deference unless the regulation is genuinely ambiguous." *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019). "And before concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction." *Id.* at 575.

45. When it comes to statutory interpretation, the Supreme Court no longer defers to agency interpretations. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01 (2024) ("[A]gencies have no special competence in resolving statutory ambiguities. Courts do."). *Loper Bright* requires that courts "exercise independent judgment in determining the meaning of statutory provisions." *Id.* at 394.

46. *Loper Bright* applied 5 U.S.C. § 706. *Id.* at 391–92. Section 706 states "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

47. Although *Loper Bright* specifically addressed deference to agency interpretations of statutes, its holding was premised on the *same sentence* of the APA that requires the reviewing court to "determine the meaning or applicability of the

*terms* of an agency action." *Loper Bright*, 603 U.S. at 391–92 (quoting 5 U.S.C. § 706) (emphasis added).

48. The APA requires courts to independently "decide all relevant questions of law . . . and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

49. Agency action that misinterprets or misapplies the governing law is agency action "not in accordance with law." *See Ohio Telecom Ass'n v. FCC (In re MCP No.185)*, 124 F.4th 993, 1001 (6th Cir. 2025). Agency action that is "not in accordance with law" is a "separate and independent ground[]" to vacate the agency action. *Rest. L. Ctr. v. U.S. Dep't of Labor*, 120 F.4th 163, 177 (5th Cir. 2024) (quoting 5 U.S.C. § 706(2)(A)); *see also Ohio Telecom Ass'n*, 124 F.4th at 1009 (holding the agency's interpretation unlawful without determining whether it is arbitrary and capricious).

## FACTUAL BACKGROUND

50. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

### *The Need for Volunteer Pilots*

51. According to researchers at the University of North Carolina at Chapel Hill, more than 5.8 million Americans miss medical appointments each year due to transportation barriers. Mary K. Wolfe et al., *Transportation Barriers to Health Care in the United States: Findings From the National Health Interview Survey, 1997–2017*, 110 Am. J. Pub. Health 815, 817 (2020), https://pmc.ncbi.nlm.nih.gov/articles/PMC7204444/pdf/AJPH.2020.305579.pdf.

52. To meet this need, pilots have been volunteering for decades to transport patients to and from medical appointments.

53. More than 25 organizations provide free transportation to medical appointments across the United States. *See* Air Care Alliance, Directory of Groups, https://aircarealliance.org/getting-assistance/directory-of-groups/ (last visited July 29, 2026).

54. Other organizations use volunteer pilots to meet different charitable goals. For example, Freedom Aviation Network provides transportation to human trafficking survivors and court-appointed advocates. *Id.* Operation Airdrop organizes flights to deliver disaster relief supplies and personnel. *Id.* Pilots N Paws moves pets from kill shelters to no-kill shelters and adoptive families. *Id.* Turtles Fly Too transports rescued turtles and other endangered species for veterinary treatment and to new habitats. *Id.*

***Barriers to Reimbursing Volunteer Pilots***

55. Unless the volunteer pilot organization receives an air carrier or commercial operator certificate or applies for an exemption, however, it cannot provide reimbursement to their volunteer pilots.

56. WOM-EM does not hold an air carrier or commercial operator certificate.

57. Upon information and belief, no other volunteer pilot organization currently holds an air carrier or commercial operator certificate.

***Plaintiff's Volunteer Flying Activities***

58. Volunteer pilots incur significant costs to provide volunteer flights.

59. Mr. Rivers does not own an airplane. The airplane he rents for volunteer flying costs $155 per hour. This cost is assessed in 0.1 hour increments based on the amount of time the engine is operating, not the total number of hours between airplane pickup and return.

60. Mr. Rivers is a volunteer pilot for WOM-EM.

61. On July 13, 2026, Mr. Rivers was the pilot in command on part of a multi-leg WOM-EM mission to transport a patient to the Mayo Clinic. Mr. Rivers paid $460 in rental fees to complete his part of this mission. Mr. Rivers was not reimbursed for this expense due to FAA's interpretations of § 61.113.

62. Mr. Rivers was personally, financially impacted by this expenditure.

63. Mr. Rivers intends to continue making similar volunteer flights in the future.

64. Those flights will continue to financially impact Mr. Rivers.

65. But for the FAA's interpretations of § 61.113, Mr. Rivers would be financially capable of providing substantially more volunteer flights than he is currently able to provide.

66. Mr. Rivers desires to provide substantially more volunteer flights than he is currently able to provide.

67. Mr. Rivers received his private pilot certificate in September 2023.

68. The statute of limitations under 28 U.S.C. § 2401(a) has not expired because Plaintiff received his private pilot certificate less than six years ago. *See* Rivers Decl. ¶ 2; *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 807–09 (2024).

## Count I

## THE COMMON PURPOSE TEST IS AGENCY ACTION NOT IN ACCORDANCE WITH LAW (5 U.S.C. § 706(2)(A))

69. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

70. FAA regulations allow a pilot to offset certain costs of "a flight with passengers" so long as the pilot does not pay "less than the pro rata share of the operating expenses." 14 C.F.R. § 61.113(c).

71. FAA interprets § 61.113(c) as requiring the pilot and passenger to have a common purpose. Bunce Interpretation at 1.

72. The Bunce Interpretation is final agency action.

73. FAA further interprets the common purpose test as excluding reimbursement for charitable medical flights because the passenger chooses the destination. *Id.*

74. The common purpose test has no basis in § 61.113(c)'s text.

75. By its own terms, § 61.113(c) applies to "a flight with passengers." 14 C.F.R. § 61.113(c). Section 61.113(c) does not use any other language to indicate that pro rata reimbursement is conditioned on the particular destination or which occupant chooses it.

76. Section 61.113(c) is not ambiguous. Therefore, no deference is due to the agency's interpretation. *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019) ("[A] court should not afford *Auer* deference unless the regulation is genuinely ambiguous.").

77. Even if § 61.113(c) were ambiguous, "a court must exhaust all the 'traditional tools' of construction" before deferring to the agency. *Id.* at 575.

78. The Supreme Court cautioned that deference to agency interpretations of its own regulations does not "permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *Id.*

79. FAA cannot add the common purpose test to § 61.113(c) by interpretation. If the agency seeks to enforce the common purpose test it must amend § 61.113(c) using notice-and-comment rulemaking.

80. Because the common purpose test finds no support in § 61.113(c)'s text, it is "agency action" that is "not in accordance with law." 5 U.S.C. § 706(2).

81. Agency action that is "not in accordance with law" is a separate, independent, and sufficient ground to vacate the agency action. *See Ohio Telecom Ass'n v. FCC (In re MCP No.185)*, 124 F.4th 993, 1009 (6th Cir. 2025).

82. Therefore, the Court should vacate the common purpose test as an agency action not in accordance with law.

## Count II

## THE THIRD-PARTY REIMBURSEMENT BAN IS AGENCY ACTION NOT IN ACCORDANCE WITH LAW (5 U.S.C. § 706(2)(A))

83. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

84. FAA regulations allow a pilot to offset certain costs of "a flight with passengers," but the pilot "may not pay less than the pro rata share of the operating expenses." 14 C.F.R. § 61.113(c).

85. FAA interprets § 61.113(c) as allowing pro rata cost sharing only when the passengers personally pay for their share. Lamb Interpretation at 2 ("[A] pilot may only seek reimbursement from his or her fellow passengers, not from a third party such as an employer." (cleaned up)).

86. The Lamb Interpretation is final agency action.

87. Passengers on charitable medical flights do not pay anything to receive the flight.

88. The third-party reimbursement ban has no basis in § 61.113(c)'s text.

89. By its own terms, § 61.113(c) applies to "a flight with passengers." 14 C.F.R. § 61.113(c). Section 61.113(c) only mandates what the pilot must pay. *Id.* ("A private pilot may not pay less than the pro rata share . . ."). It contains no language limiting who may pay for the remaining pro rata shares.

90. Section 61.113(c) is not ambiguous. Therefore, no deference is due the agency's interpretation. *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019) ("[A] court should not afford *Auer* deference unless the regulation is genuinely ambiguous.").

91. Even if § 61.113(c) were ambiguous, "a court must exhaust all the 'traditional tools' of construction" before deferring to the agency. *Id.* at 575.

92. The Supreme Court cautioned that deference to agency interpretations of its own regulations does not "permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *Id.*

93. FAA cannot add the third-party reimbursement ban to § 61.113(c) by interpretation. If the agency seeks to enforce the third-party reimbursement ban it must amend § 61.113(c) using notice and comment rulemaking.

94. Because the third-party reimbursement ban finds no support in § 61.113(c)'s text, it is "agency action" that is "not in accordance with law." 5 U.S.C. § 706(2).

95. Agency action that is "not in accordance with law" is a separate, independent, and sufficient ground to vacate the agency action. *See Ohio Telecom Ass'n v. FCC (In re MCP No.185)*, 124 F.4th 993, 1009 (6th Cir. 2025).

96. Therefore, the Court should vacate the third-party reimbursement ban as an agency action not in accordance with law.

**Count III**

**FAA'S OVERBROAD DEFINITION OF COMPENSATION IS AN AGENCY ACTION NOT IN ACCORDANCE WITH LAW (5 U.S.C. § 706(2)(A))**

97. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

98. The phrase "for compensation or hire" in 14 C.F.R. § 61.113(a) is not defined in statute or regulations. *Flytenow, Inc. v. FAA*, 808 F.3d 882, 886 (D.C. Cir. 2015).

99. FAA has applied a consistently broad definition of compensation in several letters of interpretation: "[T]he receipt of anything of value." Sommer Interpretation at 1.

100. FAA has further interpreted the phrase "compensation or hire." The Harrington Interpretation states that "the building up of flight time may be compensatory in nature if the pilot does not have to pay the costs of operating the aircraft." Harrington Interpretation at 2.

101. The Sommer and Harrington Interpretations are final agency action.

102. Thus a volunteer pilot who operates another person's aircraft (without the pilot in command paying the operating expenses) or a volunteer pilot who has his fuel billed directly to the volunteer pilot organization has received "compensation" in the form of flight hours.

103. Logged flight time is an official record of the pilot's aeronautical experience. FAA explains in detail what flight time may be logged in 14 C.F.R. § 61.51.

104. Indeed, FAA *requires* logging flight time that is used to meet training and currency requirements. 14 C.F.R. § 61.51(a) ("Each person *must* document and record the following time in a manner acceptable to the Administrator . . . ." (emphasis added)).

105. Falsifying a flight time log is grounds to revoke a person's certificates. 14 C.F.R. § 3.403.

106. Considering flight time "compensation" fits uneasily within this regulatory regime, and FAA's interpretation is not the best reading of the regulation.

107. FAA itself provided the best reading of the regulation when it first proposed the language now codified at § 61.113(a). FAA explained: "The ordinary meaning of 'compensation' includes the act of making up for whatever has been suffered or lost through another, and the act of remuneration." Clarification of Private Pilot Privileges, 28 Fed. Reg. 8157, 8158 (Aug. 8, 1963) (proposed rule). The modern § 61.113(a) is not substantively different from the regulatory language in that 1963 notice of proposed rulemaking.

108. FAA's 1963 definition fits closely with a 1966 dictionary definition for compensation: "[S]omething given or received as an equivalent for services, debt, loss, injury, suffering, lack, etc." The Random House Dictionary of the English Language 300 (1966).

109. "[A] court should not afford *Auer* deference unless the regulation is genuinely ambiguous." *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019). "And before concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction." *Id.* at 575. "Where no statutory definition exists, a court may consult a dictionary definition for guidance in discerning the plain meaning of a statute's language." *Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1060 (6th Cir. 2014).

110. Both the FAA's definition and the Random House Dictionary definition are concerned with giving something of similar value to make up for something that has been lost or suffered.

111. Given those definitions, it makes little sense to categorize flight time as "compensation." Flight time is not something "suffered or lost through another" nor "an equivalent for services" rendered as a pilot.

112. As explained above, flight time is an official record of the pilot's aeronautical experience. 14 C.F.R. § 61.51.

113. The best reading of the term "compensation" means payment directly to the pilot for the flight operating costs.

114. "Compensation" does not include a pilot logging flight time when another person directly pays the flight operating costs.

115. Deferring to an agency interpretation under *Auer* that is not the "best reading" of the regulation irreconcilably conflicts with *Loper Bright*. Although *Loper Bright* only concerned deference to agency interpretations of statutes, its holding was premised on the *same sentence* of the APA that requires the reviewing court to "determine the meaning or applicability of the terms of an agency action." *Loper Bright*, 603 U.S. at 391–92 (quoting 5 U.S.C. § 706).

116. There is no textual distinction between the APA's command that courts independently "interpret constitutional and statutory provisions" and the command that courts independently "determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The language Congress used to instruct courts—"shall decide all relevant questions of law"—is the *exact same*. *Id.*

117. It is a basic tenet of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning." *Sorenson v. Secretary of the Treasury*, 475 U.S. 851, 860 (1986) (quoting *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1934)). Thus, the Supreme Court's holding in *Loper Bright* as to agency interpretations of statutes must naturally apply to agency interpretations of regulations as well.

118. *Auer* does not follow the APA's command that "the reviewing court shall . . . determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. *Auer* deference violates both the APA and infringes on the judicial power of "a court to exercise its independent judgment in interpreting and expounding upon the laws." *Loper Bright*, 603 U.S. at 414 (Thomas, J., concurring); *see also id.* at 433 (Gorsuch, J., concurring) ("*Chevron* deference . . . . precludes

courts from exercising the judicial power vested in them by Article III to say what the law is.").

119. Because FAA's interpretation of "compensation" is not the best reading of the regulation, it is "agency action" that is "not in accordance with law." 5 U.S.C. § 706(2).

120. Agency action that is "not in accordance with law" is a separate, independent, and sufficient ground to vacate the agency action. *See Ohio Telecom Ass'n v. FCC (In re MCP No.185)*, 124 F.4th 993, 1009 (6th Cir. 2025).

121. Therefore, the Court should vacate the FAA's interpretation that flight hours are compensation because that interpretation is an agency action not in accordance with law.

122. The Court should also declare that logging flight time when another person directly pays the flight operating costs is not flying "for compensation or hire" under 14 C.F.R. § 61.113(a).

**INJUNCTIVE RELIEF ALLEGATIONS**

123. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

124. Plaintiff alleges that the common purpose test, third party reimbursement ban, and the overbroad definition of compensation are not in accordance with 14 C.F.R. § 61.113's plain text.

125. If a permanent injunction does not issue enjoining Defendants from enforcing the common purpose test, third party reimbursement ban, and the overbroad definition of compensation, Plaintiff will be irreparably harmed. *Kentucky*

*v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023) ("The federal government's sovereign immunity typically makes monetary losses like these irreparable.").

126. Plaintiff has no plain, speedy, and adequate remedy at law to prevent the Defendants from enforcing the common purpose test, third party reimbursement ban, and the overbroad definition of compensation.

127. If not permanently enjoined by this Court, Defendants will continue to enforce the common purpose test, third party reimbursement ban, and the overbroad definition of compensation despite violating the APA.

128. The two remaining injunction factors—"whether issuing the injunction would harm others and where the public interest lies—merge when the government is the defendant." *Id.*

129. When a plaintiff demonstrates "success on the merits and imminent irreparable injuries, the federal government faces a high hurdle in showing that these factors warrant withholding relief." *Id.*

130. "[T]he public's *true* interest lies in the correct application of the law." *Tennessee v. U.S. Dep't of Educ.*, 104 F.4th 577, 614 (6th Cir. 2024) (emphasis in original).

131. "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).

132. Plaintiff meets the requirements for actual success on the merits, irreparable harm, harm to others, and public interest. Therefore a permanent injunction should issue.

## DECLARATORY RELIEF ALLEGATIONS

133. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

134. An actual and substantial controversy exists between Plaintiff and Defendants as to their legal rights and duties with respect to whether the common purpose test, third-party reimbursement ban, and the overbroad definition of compensation are in accordance with law.

135. This case is presently justiciable because the common purpose test, third-party reimbursement ban, and the overbroad definition of compensation each apply to Plaintiff on their face. And Plaintiff desires to receive reimbursement for "the pro rata share of the operating expenses of a flight with passengers" and any other expenses allowable by 14 C.F.R. § 61.113's plain text, but the common purpose test, third party reimbursement ban, and the overbroad definition of compensation prevent him from doing so.

136. Declaratory relief is therefore appropriate to resolve this controversy.

## PRAYER FOR RELIEF

Pursuant to 5 U.S.C. § 706, 28 U.S.C. § 2201, and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring that the common purpose test, third party reimbursement ban, and overbroad definition of compensation are not in accordance with law.

Pursuant to 5 U.S.C. § 706, it is appropriate and hereby requested that the Court hold unlawful and set aside the common purpose test, third party reimbursement ban, and the overbroad definition of compensation.

Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue permanent injunctions prohibiting Defendants from enforcing the common purpose test, third party reimbursement ban, and the overbroad definition of compensation against Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendants and that the Court:

(1) declare that the common purpose test, third party reimbursement ban, and the overbroad definition of compensation are not in accordance with law;

(2) hold unlawful and set aside the common purpose test, third party reimbursement ban, and the overbroad definition of compensation;[2]

(3) issue a permanent injunction against the Defendants, as well as all agents, administrators, employees, or other persons acting on behalf of the

[2] The common purpose test, ban on third-party reimbursement, and overbroad definition of compensation appear in numerous discrete agency actions. Accordingly, Plaintiff requests the Court specifically vacate the following agency actions, all of which are FAA letters of interpretation identified by recipient and date issued: Paul Ware (Feb. 13, 1976); John Harrington (Oct. 23, 1997); Joseph Kirwan (May 27, 2005); Peter Bunce (Nov. 19, 2008); Guy Mangiamele (Mar. 4, 2009); Don Bobertz (May 18, 2009); Taylor Perry (July 28, 2010); Robin Johnson (Sept. 13, 2010); Mark Haberkorn (Oct. 3, 2011); Mike Sommer (Oct. 8, 2010); Alan Dias (Dec. 19, 2011); Gary Eaton (Dec. 7, 2012); Andrew Stoner (Feb. 25, 2013); John Hancock (Mar. 18, 2013); David Voyles (May 7, 2013); Randy Howell (Sept. 13, 2013); Jeffrey Reich (Dec. 13, 2013); Larry Williams (July 9, 2014); and Rebecca MacPherson (Aug. 13, 2014).

Defendants, from enforcing the common purpose test, third party reimbursement ban, and the overbroad definition of compensation against Plaintiff;

(4) award Plaintiff his costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney fees pursuant to 28 U.S.C. § 2412; and

(5) grant such other and further relief as the Court deems equitable, just, and proper.

DATED: September 28, 2026

Respectfully submitted,

*/s/Eric Heigis*
ROBERT HENNEKE
TX Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
TX Bar No. 24076767
cweldon@texaspolicy.com
THEODORE HADZI-ANTICH
CA Bar No. 264663
tha@texaspolicy.com
ERIC HEIGIS
CA Bar No. 343828
eheigis@texaspolicy.com
LAURA ELIZABETH KING LATIMER
TX Bar No. 24116619
lblatimer@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700

JOSEPH RICHOTTE
MI Bar No. P70902
BUTZEL
Columbia Center
201 W. Big Beaver Rd., #1200
Troy, Michigan 48084
(248) 258-1616
richotte@butzel.com

*Counsel for Jeremy Rivers*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JEREMY RIVERS,
*Plaintiff,*

v.

FEDERAL AVIATION ADMINISTRATION, et al.,
*Defendants*,

Civil Case No. ____________________

**DECLARATION OF JEREMY RIVERS**

Declarant, Jeremy Rivers, states as follows:

1. I am over the age of eighteen (18) and am competent to testify in this matter. I have personal knowledge of the following facts and if called upon to do so could competently testify to them under oath. As to those matters which reflect a matter of opinion, they reflect my personal opinion and judgment upon the matter.

2. I currently hold a commercial pilot certificate with airplane single engine land, single engine sea, and multi-engine land ratings. The Federal Aviation Administration ("FAA") issued me a private pilot certificate on September 19, 2023.

3. I hold a commercial pilot certificate. I am aware that I may only exercise my commercial pilot privileges if the operator holds the appropriate FAA certificates for the flight operation. If the operator does not hold an air carrier certificate I must exercise my private pilot privileges.

4. I am a volunteer pilot with Wings of Mercy East Michigan, Inc. ("WOM-EM"). I have flown patients both as the pilot in command and as a right-seat backup pilot.

5. WOM-EM's mission is to provide free transportation to patients who do not have the financial means to travel to distant medical facilities. Neither the patient nor their insurance pay anything for the flight. Without this organization and volunteer pilots like me, many patients face transportation barriers to their medical care—and some forego treatment altogether.

6. Because WOM-EM does not hold an air carrier certificate, I cannot exercise my commercial pilot privileges for WOM-EM volunteer flights. Instead I must exercise my private pilot privileges.

7. I rent a Piper Archer III for volunteer flights in which I am the pilot in command. The rental fee for this aircraft is $155 per hour.

8. On July 13, I was the pilot in command on part of a multi-leg journey to transport a patient to the Mayo Clinic. I paid $460 in rental fees to complete my part of this mission. I was not reimbursed for this expense.

9. I am aware that FAA regulations do not allow a private pilot to receive compensation, including reimbursement of flight costs. *See* 14 C.F.R. § 61.113(a). I am also aware that there is an exception that allows a pilot to be reimbursed up to "the pro rata share of the operating expenses of a flight with passengers." *Id.* § 61.113(c). However, FAA interpretations do not allow volunteer pilots to use that exception. First, FAA requires the pilot and passenger to have a "common purpose" for the flight, and the destination (i.e. a medical treatment facility) cannot be chosen by the passenger. *See* Letter from Rebecca MacPherson, FAA Assistant Chief Counsel for Regulations, to Peter Bunce 1 (Nov. 19, 2008), https://www.faa.gov/media/14781. Second, FAA interpretations do not allow a pilot to receive a reimbursement from a third

party (like a charity such as WOM-EM). Letter from Rebecca MacPherson, FAA Assistant Chief Counsel for Regulations, to Ronald Lamb 2 (Mar. 1, 2010), https://www.faa.gov/media/14196. Instead, the reimbursement must come directly from the passenger. *Id.*

10. Requiring the passenger on a volunteer flight to reimburse the flight costs defeats the purpose of these charitable flights, which are designed to reduce transportation barriers for patients.

11. I will complete additional volunteer flights in the future with WOM-EM. However, the costs I must bear for these volunteer flights without reimbursement limits the number of flights I can provide.

12. If WOM-EM reimburses me for flight operating costs I will be able to complete more flights than I presently intend to complete.

13. But for the FAA interpretations identified in ¶ 9, I would accept reimbursement from WOM-EM for "the pro rata share of the operating expenses of a flight with passengers" and any other expenses allowable by 14 C.F.R. § 61.113's plain text.

Pursuant to 28 U.S.C. § 1746, I, Jeremy Rivers, declare under penalty of perjury that the foregoing is true and correct.

Executed on the 2 day of September, 2026, in Northville, in the State of Michigan.

JEREMY RIVERS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JEREMY RIVERS,
*Plaintiff,*

v.

FEDERAL AVIATION ADMINISTRATION, et al.,
*Defendants,*

Civil Case No. ____________________

## DECLARATION OF CODY WELCH

Declarant, Cody Welch, states as follows:

1. I am over the age of eighteen (18) and am competent to testify in this matter. I have personal knowledge of the following facts and if called upon to do so could competently testify to them under oath. As to those matters which reflect a matter of opinion, they reflect my personal opinion and judgment upon the matter.

2. I am the president of Wings of Mercy East Michigan, Inc. ("WOM-EM"). WOM-EM is a Michigan non-profit corporation recognized as a public charity under section 501(c)(3) of the Internal Revenue Code.

3. WOM-EM's mission is to provide free transportation to patients who do not have the financial means to travel to distant medical facilities. Neither the patient nor their insurance pay anything for the flight.

4. To complete its mission, WOM-EM relies on volunteer pilots who own or rent small airplanes to provide transportation to patients.

5. Since 1996, WOM-EM has provided more than 1,500 free flights to patients.



CW

6. WOM-EM has an impeccable safety record. In its 30 years of operations, WOM-EM has had zero major accidents and zero fatalities on its missions. The only incident that occurred was on a single mission and resulted in minor injuries.

7. Our most common mission is flying residents of East Michigan to the Mayo Clinic in Rochester, MN, or the University of Wisconsin Hospital in Madison, WI. A two-hour flight with a volunteer pilot replaces an eleven-hour drive.

8. WOM-EM does not hold a Federal Aviation Administration ("FAA") air carrier or commercial operator certificate.

9. WOM-EM does not compete with airlines or any other FAA-certificated air carrier. The primary difference between WOM-EM and an air carrier is that the patient does not pay anything for the flight. Additionally, WOM-EM uses small planes that can land at airports not served by larger air carriers.

10. FAA regulations do not allow a private pilot to receive compensation, including reimbursement of flight costs. *See* 14 C.F.R. § 61.113(a). But there is an exception that allows a pilot to be reimbursed up to "the pro rata share of the operating expenses of a flight with passengers." *Id.* § 61.113(c). However, FAA interpretations do not allow volunteer pilots to use that exception. First, FAA requires the pilot and passenger to have a "common purpose" for the flight, and the destination (i.e. a medical treatment facility) cannot be chosen by the passenger. *See* Letter from Rebecca MacPherson, FAA Assistant Chief Counsel for Regulations, to Peter Bunce 1 (Nov. 19, 2008), https://www.faa.gov/media/14781. Second, FAA interpretations do not allow a pilot to receive a reimbursement from a third party (like a charity such as WOM-EM). Letter from Rebecca MacPherson, FAA Assistant Chief Counsel for Regulations, to Ronald Lamb 2 (Mar. 1, 2010), https://www.faa.gov/media/14196. Instead, the reimbursement must come



CH

directly from the passenger. *Id.* Third, FAA considers anything of value that is received in connection with a flight as compensation. *See* Letter from Rebecca MacPherson, FAA Assistant Chief Counsel for Regulations, to Mike Sommer 1 (Oct. 8, 2010), https://www.faa.gov/media/14326. This includes meals or lodging for multi-day flights.

11. WOM-EM's volunteer pilots do not accept any reimbursement or payment from the patients they transport. That means volunteer pilots are ineligible for any reimbursement from WOM-EM even if the pilot and patient have a bona fide common purpose.

12. WOM-EM is facing a shortage of volunteer pilots due, in large part, to the operating expenses for a volunteer flight. One flight from Michigan to the Mayo Clinic can easily exceed $1,000 in operating expenses. Because of this shortage, WOM-EM is unable to fulfill all of the requests it receives from qualified patients.

13. WOM-EM desires to reimburse its volunteer pilots for flight operating expenses and has the funds to do so. But for the FAA interpretations identified in ¶ 10, WOM-EM would reimburse its volunteer pilots for "the pro rata share of the operating expenses of a flight with passengers" and any other expenses allowable by 14 C.F.R. § 61.113's plain text.

14. Jeremy Rivers is a volunteer pilot who has flown patients for WOM-EM. Mr. Rivers has expressed an intent and desire to fly more patients for WOM-EM in the future.

15. But for the FAA interpretations identified in ¶ 10, WOM-EM would reimburse Mr. Rivers for "the pro rata share of the operating expenses of a flight with passengers" and any other expenses allowable by 14 C.F.R. § 61.113's plain text.



CBK

Pursuant to 28 U.S.C. § 1746, I, Cody Welch, declare under penalty of perjury that the foregoing is true and correct.

Executed on the 31 day of August, 2026, in Ocala, in the State of Florida.

Cody Welch
President
Wings of Mercy East Michigan, Inc.